IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LEE ANDREW KENNEDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:12-cv-00525-WHA |
| | ) [WO] |
| | ) |
| CPL. JEFFERY SOLOMON, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Plaintiff Lee Andrew Kennedy ("Kennedy"), a former[1] inmate of the Montgomery County Detention Center, claims he was falsely arrested and discriminated against in connection with his arrest for theft of property at a Sam's Club.[2] The only remaining defendant is Jeffery Solomon ("Solomon"), a detective assigned to the Property Crimes Division with the Montgomery Police Department. Kennedy does not clarify in his pleadings whether he sues Solomon in his official capacity, individual capacity, or both. *Doc. No. 1*. The court assumes Kennedy brings claims against Solomon in his individual and official capacities. The court dismissed the request for relief from the

---

[1] On December 11, 2012, Kennedy informed the Court his address had changed to an apartment in Phenix City, Alabama. *Doc. No. 46.* Kennedy has not filed anything with the Court since that date.

[2] Kennedy raised other claims in his Complaint, *Doc. No. 1*, and the Court dismissed the other claims pursuant to 28 U.S.C. § 1915(e)(2)(B). *Doc. No. 19, adopting Report and Recommendation, Doc. No. 5.*

pending criminal charge. *Doc. No. 19, adopting Report and Recommendation, Doc. No. 5.* Thus, only Kennedy's claim for damages against Solomon remains.

Defendant Solomon filed special reports and supporting evidentiary materials addressing Kennedy's claims for relief. In these documents, Solomon adamantly denies Kennedy's allegations. Upon consideration of the evidentiary materials filed in support thereof, the court construes Solomon's reports as a motion for summary judgment, and upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that Solomon's motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflects the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the

absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendant Solomon has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Kennedy to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it . . . ."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . " *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.

3

1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Kennedy fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on his claims against the defendant. *Matsushita*, 475 U.S. at 587.

### A. Summary of Material Facts

The court views the evidence in the light most favorable to Kennedy, the nonmoving party. On May 12, 2012, Jeff Young,[3] the manager of Sam's Club on Eastern Boulevard in Montgomery, Alabama, called for a patrol unit to respond to a shoplifter in custody for events occurring on May 11, 2012. *Solomon Aff.-Doc. No. 45-1* at 1.[4] The unit took Kennedy into custody for a theft charge. *Id.* Kennedy questioned Young as to whether Young was engaging in racial profiling. *Doc. No. 1* at 4. Kennedy was shown photos supposedly showing Kennedy engaging in theft, but Kennedy states that in both photos, he and a white female were doing the same thing, that is, shopping. *Doc. No. 1* at 4. Kennedy maintains that Young had Kennedy arrested for questioning Young's motives. *Id.*

On May 12, 2012, Solomon was employed by the Montgomery Police Department as a detective in the Property Crimes Division. *Solomon Aff.-Doc. No. 45-1* at 1. Kennedy also told Solomon that Kennedy believed he was being racially profiled because he and the white female in the photo were doing the same thing. *Doc. No. 1* at 5. Kennedy states that Solomon allowed racial profiling to override his duty as a detective. *Id.*

---

[3] Young was dismissed as a defendant pursuant to 28 U.S.C. § 1915(e)(2)(B). *Doc. No. 19*, *adopting Report and Recommendation, Doc. No. 5.*

[4] Solomon submitted three affidavits. *Doc. Nos. 13-1, 18-2, 45-1.* Solomon initially stated that "Sam's Club Loss Prevention employees witnessed the action taken by Mr. Kennedy, signed a Theft of Property I warrant against Mr. Kennedy and posted a lookout for him." *Doc. No. 13-1* at 1; *Doc. No. 18-1* at 1. In his second affidavit, Solomon added only that he did not arrest a "white female" because he was provided no information that a white female customer was suspected of shoplifting. *Doc. No. 18-2* at 2. In his final affidavit, Solomon stated, among other things, that it "was merely a mistake" when he earlier swore that a Sam's Club employee signed the warrant. *Doc. No. 45-1* at 2. Instead, the employees witnessed Kennedy's acts and posted a lookout for him. *Id.* When Kennedy returned the next day, on May 12, 2012, employees contacted police. *Id.*

Solomon conducted an interview of Young on May 12, 2012, at 3:00 p.m. *Doc. No. 33-1* at 42-45 (Voluntary Statement Form, Montgomery Police Department, on May 12, 2012, from 15:00 hours to 15:06 hours). Solomon learned that Young had video[5] and still shots from the video showing Kennedy in Sam's Club. *Solomon Aff. - Doc. No. 45-1* at 1. Solomon states he was told that Kennedy had been in the store on May 11, 2012, "and was witnessed taking packets of flea and tick killer, concealing them inside his coat and leaving [the] store with the packs." *Solomon Aff. - Doc. No. 18-2* (alteration added); *Doc. No. 33-1* at 42. The merchandise taken was valued at $1400. *Id.* at 44. The record also includes "Incident Reporting" documents from Sam's Club describing Kennedy's suspected theft activity at Sam's Club on January 11, April 5, April 7, April 10, April 25, May 11, and May 12. *Doc. No. 54-5* at 4, 6, 9, 12-15, 18, 20, 22, 24, 26, 28, 30. The record includes still photographs of Kennedy or his co-defendant captured from video at Sam's Club on May 11, 2012, and accountings of missing merchandise. *Doc. No. 54-6* at 3, 13, 15, 21, 30-35. The record also includes still photographs of Kennedy captured from video at Sam's Club on other dates. *Doc. No. 54-6* at 1-2, 4-6, 10-12, 14, 16-20, 22, 24-29; *Doc. No. 54-7*.

---

[5] Kennedy states that at the time of his arrest he was shown a video with a "white female" in it that was not the same video "presented now." *Doc. No. 37* at 2. Kennedy also states that Solomon fabricated the interviewed with Jeff Young and backdated it to support the arrest warrant. *Id.* Kennedy's statement, however, is conclusory. More importantly, it is not sworn under penalty of perjury and is not otherwise sufficient to constitute evidence for purposes of the summary judgment record. *See* 28 U.S.C. § 1746; *see also Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555 at *2 (11th Cir. 2007) (per curiam) ("unsworn statements, even from *pro se* parties, should not be consider[ed] in determining the propriety of summary judgment") (quotation marks and citation omitted). The court cautioned Kennedy that he could not rely on unsworn statements or pleadings. *Doc. No. 56.* Except for his initial complaint, none of Kennedy's statements concerning this case were sworn. *Doc. Nos. 1, 16, 37, 40.* Kennedy's unsworn statements will not be considered in determining the defendant's dispositive motion.

Solomon spoke with Paul Reynolds, a property loss investigator for Sam's Club. *Solomon Aff. - Doc. No. 45-1* at 1. Reynolds told Solomon that the store had video showing Kennedy stealing from the store on May 11, 2012, and it had video showing Kennedy involved in thefts on April 20, 2012, and April 22, 2012. *Id.* Solomon met with Reynolds at the Montgomery Police Station on May 12, 2012, and Solomon looked at the still shots. *Id.* Solomon went to Sam's Club that same day to review the videos.[6] *Id.* Solomon states:

> Specifically, I saw on video the co-defendant in the criminal case take the items and put them towards the end of the aisle. Lee Andrew Kennedy would then pick up the items and conceal them. I saw Lee Andrew Kennedy pick up and put the items in the buggy then conceal them under a jacket.

*Solomon Aff. - Doc. No. 45-1* at 2. Solomon also contacted a detective with the Hoover Police Department in Hoover, Alabama, who informed Solomon that he had two warrants signed on Kennedy for similar thefts. *Id.* The record includes an April 12, 2012, Sam's Club internal alert for Kennedy for the cities of Hoover and Homewood that includes three photos of Kennedy identified as "Subject 1," and the alert states, in relevant part:

> The subject captioned below is under investigation for theft of merchandise, via concealment. The M.O. is for Subject 1 to enter a club, select large quantities of TurboTax software, and then proceed to a low traffic aisle to conceal the merchandise on his person. He exits the clubs, visits the vehicle he is traveling in, and then makes a second trip inside the building to repeat the same act as described above. Subject 1 is believed to be the passenger in the vehicle. Documented losses exceed $20,000.

---

[6] Kennedy states in his unsworn statement that, to his knowledge, Solomon did not visit Sam's Club. *Doc. No. 16* at 3. The statement will not be considered as part of the summary judgment record. *See supra* n.5

7

*Doc. No. 54-7*. Solomon states he reviewed video at Sam's Club that shows Kennedy in the store on May 11, 2012. *Solomon Aff. - Doc. No. 45-1* at 1-2. Solomon states that "[b]ased on the statements provided by Jeff Young, and Paul Reynolds, as well as the video and still shots, a warrant was signed on Lee Andrew Kennedy." *Solomon Aff. - Doc. No. 45-1* at 2 (alteration added). Defendants submitted the videos provided by Sam's Club. *Doc. No. 54-1, 54-2, 54-3, 54-4*. Kennedy has not disputed that he is the person shown in the videos. The submission for May 11, 2012, consists of six separate video clips. *Doc. No. 54-4*. The first video shows Kennedy entering Sam's Club shortly before 3:00 p.m. on May 11, 2012. *Doc. No. 54-4* (video 14.52.52_14.57.59). The second video shows Kennedy entering the area near the software display, then stopping at the endcap. He places a number of boxes that appear to be software in his cart. He puts a red cloth, perhaps a bag, on top of them. He puts a dark cloth that appears to be a jacket on top of the pile, then he walks away. *Doc. No. 54-4* (video 14.56.51_15.06.59). The third video clip shows the same events around the software display from a different angle. *Doc. No. 54-4* (video 14.58.31_15.08.39).

The fourth video shows the Kennedy entering Aisles 10-11 at about 3:01 p.m., pushing a cart with his walker inside. *Doc. No. 54-4* (video 15.01.36_15.11.39.avi). Aisle 10 appears to be labeled "Pet Care." Kennedy stops about halfway down the aisle, turns the cart to face the other direction, away from the camera, then moves the cart over to the side, on the side of Aisle 11. The image is grainy and most of the time he is facing away from the camera, so it is difficult to see what he is doing clearly. He takes things off the shelf

to his right, then takes a few steps forward with the cart, away from the camera, and appears to take more things off the shelf. Kennedy stands at the cart, facing away from the camera, doing something with his arms. It is difficult to discern what he is doing because his coat is obstructing the view and he faces away from the camera. Kennedy leaves the cart and uses his walker to walk across the aisle to look at something. At about 3:06 p.m., Kennedy uses his walker to walk down the aisle, away from the camera, and leaving the cart in the aisle. He turns left when he gets to the end of the aisle, at 3:06:40 p.m., and he does not return. *Doc. No. 54-4* (video 15.01.36_15.11.39.avi).

The fifth video shows a man identified as Kennedy's codefendant in Sam's Club at about 7:36 p.m. on May 11, 2012. *Doc. No. 54-4* (video 19.36.35_19.46.39). He appears to arrange boxes from the display near the end of the aisle. A few minutes later, Kennedy arrives and takes a bag of boxes from the area where Kennedy's codefendant had been arranging something. Kennedy pushes his cart away at about 7:40 p.m. *Doc. No. 54-4* (video 15.01.36_15.11.39.avi).

The sixth video shows Kennedy entering Aisles 12-13 at about 7:43 p.m. on May 11, 2012. *Doc. No. 54-4* (video 19.42.50_19.43.59). He stops near the end of the aisle, turns his cart to face the other direction, away from the camera, then moves the cart over to the side, on the side of Aisle 13. *Doc. No. 54-4* (video 19.42.50_19.43.59).

On May 12, 2012, Solomon applied for an arrest warrant for Kennedy for second degree theft of property. *Doc. No. 33-1* at 47. The "Details of the Offense" portion of the

9

affidavit provides, in its entirety, as follows:

> On 5/11/2012 at 1509 hours Lee Andrew Kennedy, did knowingly obtain or exert unauthorized control over the following property 10 Frontline Flea and Tick Treatment Boxes valued at $371.40 and 10 assorted Computer Software boxes valued at $400.00 for a total value of $771.40 the property of Sams Club located at 1080 Eastern Blvd., and having a value of in excess $500.00 dollars but not in excess of $2500.00 dollars, with the intent to deprive the said owner of the said property in violation of 13A8-4 of the code of Alabama, against the peace and dignity of the State of Alabama.

*Id.* [sic]. The magistrate issued the warrant and a complaint for Theft of Property 2nd, and they were printed on May 12, 2012, at 4:27 p.m. *Id.* at 48-49.

Solomon arrested Kennedy on May 12, 2012, at 5:00 p.m. *Doc. No. 33-1* at 13. Neither party submits other court records regarding criminal proceedings against Kennedy, but counsel for Solomon represents that Kennedy was indicted by a grand jury on one count of first-degree theft of property and two counts of second-degree theft of property. *Doc. No. 33* at 2, ¶ 3. Kennedy indicated in his unsworn statement that he was indicted by a grand jury on September 17, 2012. *Doc. No. 37* at 2. Counsel for Solomon represented to the court on December 11, 2012, that Kennedy "was found not guilty." *Doc. No. 45* at 2, ¶ 5.

Kennedy asserted in his original, verified complaint that the video and images depict a white female who shopping just as Kennedy was. *Doc. No. 1* at 4. On October 23, 2012, Kennedy stated that at the time of his arrest he was shown a video with a "white female" in it that was not the same video "presented now." *Doc. No. 37* at 2. Although given an

opportunity, Kennedy did not respond or identify the "white female" in any of the videotapes and photographic evidence submitted on March 12, 2013. *Doc. Nos. 54, 56.* Solomon avers that he did not arrest a white female "because I was not provided any information on a white female customer that was suspected of taking items. There was no warrant for a white female customer and I was provided no evidence involving a white female customer." *Solomon Aff.-Doc. No. 45-1* at 2.

## B. Discussion

Kennedy claims that Solomon arrested him without probable cause and allowed the Sam's Club manager to pursue an arrest based on racial profiling.[7] *Doc. No. 1* at 5. In response, Solomon raises several defenses, including qualified immunity.

### 1. Qualified Immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly

---

[7]The Court of Appeals has stated that a seizure pursuant to an arrest warrant gives rise to a § 1983 claim of malicious prosecution, not false arrest. *Elmore v. Fulton County School Dist.*, No. 14-14063, 2015 WL 1542697, at *9 (11th Cir. Apr. 8, 2015) (unpublished) (per curiam) (citations omitted); *see also Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (citations omitted). Plaintiff Kennedy's challenge to the arrest warrant is thus construed as a claim for malicious prosecution. Both malicious prosecution and a false arrest require a plaintiff to show a Fourth Amendment violation. Malicious prosecution additionally requires a plaintiff to show "'(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" *Elmore*, 2015 WL 1542697 at *9 & n.6 (quoting *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)). Although neither party addresses the malicious prosecution question directly, Solomon stated that Kennedy was found not guilty, *Doc. No. 45* at 2 ¶ 5, thus Kennedy's criminal prosecution apparently terminated in his favor. Even assuming Kennedy properly brought a malicious prosecution claim, the Court concludes that Solomon is entitled to qualified immunity on the Fourth Amendment issue. Consequently, Kennedy cannot prevail regardless whether his claim is for malicious prosecution or false arrest.

established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citations omitted) (alteration added). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Solomon was acting within the course and scope of his discretionary authority when the incidents complained of occurred. Kennedy must, therefore, allege facts that, when read in a light most favorable to him, show that Solomon is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quotation marks and citations omitted).

## 2. Arguable Probable Cause

"It is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013) (quotation marks and citation omitted). "Probable cause exists when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 978 (quoting *Lee*, 284 F.3d at 1195 (internal quotation marks omitted)). "An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs." *Id.* at 977-78 (quotation marks and citation omitted).

An officer loses qualified immunity if "'a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant.'" *Carter*, 557 F. App'x at 908 (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). In addition, "[a]n officer loses qualified immunity if the plaintiff can prove that the officer perjured himself—that is, put forth information he did not believe or accept as true—in order to obtain a search warrant." *Carter*, 557 F. App'x at 908 (citing *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994)); *see also Franks v. Delaware*, 438 U.S. 154, 156 (1978) (describing standard for voiding warrant based on perjury or reckless disregard for the truth).

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996); *cf. id.* (under the Fourth Amendment an arrest is not invalid if, though justified by the circumstances, it was pretextual). To prevail, a plaintiff must show (1) others similarly situated have not been that arrested, and (2) the discriminatory selection of plaintiff "'is invidious, or in bad faith that is based on constitutionally impermissible considerations, such as race or religion.'" *Durruthy v. Pastor*, 351 F.3d 1080, 1091 (11th Cir. 2003) (citations omitted); *see also Urbanique Prod. v. City of Montgomery*, 428 F. Supp. 2d 1193, 1223 (M.D. Ala. 2006).

### 4. Analysis

Kennedy argues that Solomon acquiesced to the wishes of Sam's Club employees who wanted Kennedy arrested because he questioned whether they engaged in racial profiling when they accused him of shoplifting, even though the evidence did not show Kennedy committed theft. He asserts that a white woman photographed next to him was doing the same thing he was doing, but she was not arrested. *Doc. No. 1* at 4-5.

As relevant to Kennedy's case, under Alabama law a person commits theft of property second if the person "[k]nowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property[,]" or "[k]nowingly obtains by deception control over the property of another, with intent to deprive the owner of his or

her property[,]" and the value of the property exceeds $500.00 but does not exceed $2,500.00. Ala. Code § 13A-8-2, § 13A-8-4.

The affidavit supporting the warrant application is conclusory and reads more like an indictment under the statute rather than an explanation of how Solomon had personal knowledge or reasonably trustworthy information that Kennedy committed a crime. *Doc. No. 33-1* at 47; *see Wilkerson*, 736 F. 3d at 977 (stating the requirements for probable cause). But if the additional facts that were known to Solomon are considered, there is no question on this summary judgment record that Solomon had at least arguable probable cause to arrest Kennedy on May 12, 2012.

Viewing the evidence in the light most favorable to Kennedy, a reasonable officer in Solomon's circumstances would have known that the Sam's Club manager, Jeff Young, witnessed Kennedy shoplifting flea and tick medicine as well as software from the store at a value of about $770 on May 11, 2012, and that the store had video and still shots showing Kennedy's acts. Solomon knew the store had placed a lookout for Kennedy based on the May 11, 2012, incident, and employees recognized Kennedy when he returned to the store on May 12, 2012. Solomon knew from Paul Reynolds, the Sam's Club property loss investigator, that the store had evidence showing Kennedy involved in previous thefts using a similar mode. Solomon also looked at the available videos. The videos show Kennedy picking up and taking items his codefendant placed at the end of an aisle, and Kennedy placing items in his buggy and then concealing them under his jacket on May 11, 2012. *Doc. No. 54-4*. Solomon

confirmed with a detective at the Hoover Police Department in Hoover, Alabama, that the detective had two warrants signed on Kennedy for similar thefts. *Doc. No. 45-1*. The facts Solomon provides are supported by the summary judgment record. Even considering the racial profiling comments and other evidence Kennedy identifies, "the facts could have led a prudent officer to believe that reasonably trustworthy information established probable cause" that Kennedy committed theft of property in the second degree at Sam's Club on May 11, 2012, and on the basis of those facts a reasonable officer could have applied for a warrant. *See Elmore*, 2015 WL 1542697 at *6 (citations omitted). In other words, "the totality of the circumstances present[ed] a sufficient basis for believing that an offense ha[d] been committed." *Id.* (quotation marks and citation omitted) (alterations added). Based on the undisputed record, no reasonable juror could find that Solomon lacked arguable probable cause to arrest Kennedy, and Solomon is entitled to qualified immunity on the question whether he had arguable probable cause to arrest Kennedy.

As for the equal protection claim, apart from Kennedy's self-serving, conclusory statement in his complaint, there is no evidence in the record to support Kennedy's claim regarding racial profiling or selective enforcement. Kennedy does not identify which video or photo in the record shows a white woman doing the same thing he was doing. Second, Solomon did not choose Kennedy but rather was called to Sam's Club at the request of Sam's Club employees who are not defendants. There simply is no evidence that Solomon used race as the basis of initiating an investigation and eventual arrest of Kennedy, thus summary

16

judgment is due to be granted in Solomon's favor on Kennedy's equal protection claim. *See Urbanique*, 428 F. Supp. at 1225. Solomon is therefore entitled to judgment as a matter of law on the claims brought against him in his individual capacity.

### 5. Official Capacity Claim

To the extent Kennedy claims a constitutional violation against Solomon in his official capacity, the claim is effectively asserted against the City of Montgomery, Solomon's employer. Because Kennedy's claim against Solomon fails, he cannot maintain his suit against the City. *See Urbanique Production*, 428 F. Supp.2d at 1225 ("Municipal liability is foreclosed on Plaintiffs' Fourteenth Amendment claim against the City because the court has concluded that no underlying equal protection violation was committed by [defendant] as to the events at issue in this case.") (citing *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) ("An inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise."). In addition, Kennedy fails to make any showing that Solomon acted pursuant to a custom or policy that constituted deliberate indifference to his constitutional rights. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Solomon is therefore due to be granted summary judgment on the claims brought against him in his official capacity.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment on behalf of the defendant be GRANTED;

2. This case be dismissed with prejudice in accordance with Federal Rule of Civil Procedure 56.

It is further

ORDERED that on or before May 27, 2015, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit

handed down prior to the close of business on September 30, 1981.

Done this 11th day of May 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATE MAGISTRATE JUDGE